UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| PRATIK KHOWALA, | |
|---|---|
| Plaintiff, | No. 1:23-cv-01068-AT |
| v. | |
| VIVINT SMART HOME, INC. and VIVINT, INC., | |
| Defendants. | |

## DEFENDANTS' NOTICE OF MOTION TO COMPEL ARBITRATION

Defendants Vivint, Inc. and Vivint Smart Home, Inc., hereby move to compel Plaintiff Pratik Khowala's claims against them to arbitration pursuant to the Utah Uniform Arbitration Act, the Federal Arbitration Act, and this Court's Order granting leave to file, ECF No. 14.

The grounds and authorities supporting this motion are set forth in the accompanying Memorandum of Law, Declaration of Bryan Brothers, and Exhibits A-1 through A-4.

Dated: May 24, 2023

McDowell Hetherington LLP

*/s/ Michael D. Matthews, Jr*
Michael D. Matthews, Jr.
Diane S. Wizig*
McDowell Hetherington LLP
1001 Fannin Street, Suite 2400
Houston, Texas 77002
Telephone: (713) 337-5580
Facsimile: (713) 337-8850
matt.matthews@mhllp.com
diane.wizig@mhllp.com

*Attorneys for Defendants Vivint Smart Home, Inc. and Vivint, Inc.*

*pro hac vice application forthcoming

1

## **CERTIFICATE OF SERVICE**

  I hereby certify that a true and correct copy of the foregoing has been served on the 24th day of May, 2023 via CM/ECF on all counsel of record.

                /s/*Michael D. Matthews, Jr.*
                Michael D. Matthews, Jr.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PRATIK KHOWALA,<br><br>                Plaintiff,<br><br>v.<br><br>VIVINT SMART HOME, INC. and VIVINT, INC.,<br><br>                Defendants. | No. 1:23-cv-01068-AT |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**<u>MOTION TO COMPEL ARBITRATION</u>**

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................... 1

II. FACTUAL & PROCEDURAL BACKGROUND ..................................................... 2

III. ARGUMENT & AUTHORITIES ............................................................................ 4

    A. The 2016 PSA is valid and its abitration provision must be enforced. ............................... 4

        1. Mr. Khowala entered into a valid agreement to arbitrate with Vivint in 2016. ............. 4

        2. Mr. Khowala's claims are subject to the 2016 PSA's arbitration provision. ................. 8

    B. If the Court finds there is a question about whether Mr. Khowala agreed to the 2016 PSA, the 2022 PSA's arbitration provision mandates the same result. ........................................ 9

    C. The claims against Vivint Smart Home, Inc. are also subject to arbitration, regardless of which PSA controls. ........................................................................................................ 9

IV. CONCLUSION & PRAYER ................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**                                                                                                                   **Page(s)**

*Ahhmigo, LLC v. Synergy Co. of Utah, LLC*,
   2022 UT 4, 506 P.3d 536 ........................................................................................................3

*Aleksanian v. Uber Techs., Inc.*,
   524 F. Supp. 3d 251 (S.D.N.Y. 2021) ....................................................................................5

*Allstate Ins. Co. v. Am. Home Prod. Corp.*,
   No. 01 Civ. 10715(HBP), 2010 WL 1257337 (S.D.N.Y. Mar. 31, 2010) ..............................10

*In re Am. Express Fin. Advisors Sec. Litig.*,
   672 F.3d 113 (2d Cir. 2011) ...........................................................................................4, 8, 9

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ................................................................................................................5

*Bynum v. Maplebear Inc.*,
   160 F. Supp. 3d 527 (E.D.N.Y. 2016) ....................................................................................5

*Camilo v. Lyft, Inc.*,
   384 F. Supp. 3d 435 (S.D.N.Y. 2019) .................................................................................5, 8

*Can Man Carting, LLC v. Spiezio*,
   86 N.Y.S.3d 182 (2018) ..........................................................................................................6

*Cent. Fla. Invs., Inc. v. Parkwest Assocs.*,
   2002 UT 3, 40 P.3d 599 ..........................................................................................................5

*Dean Witter Reynolds Inc. v. Byrd*,
   470 U.S. 213 (1985) ................................................................................................................4

*Feld v. Postmates, Inc.*,
   442 F. Supp. 3d 825 (S.D.N.Y. 2020) ....................................................................................7

*Gartly v. Selip & Stylianou LLP*,
   No. 1:18-CV-1806 (ARR) (VMS), 2018 WL 5777033 (E.D.N.Y. Nov. 2,
   2018) ...............................................................................................................................11, 12

*Gold v. Deutsche Aktiengesellschaft*,
   365 F.3d 144 (2d Cir.2004) ...................................................................................................10

*Harrington v. Atl. Sounding Co., Inc.*,
   602 F.3d 113 (2d Cir. 2010) ....................................................................................................5

*HITORQ, LLC v. TCC Veterinary Servs., Inc.*,
   2021 UT 69 .....................................................................................................................4, 8, 9

*Howsam v. Dean Witter Reynolds, Inc.*,
 537 U.S. 79 (2002) ................................................................................................................10

*Livingston v. Finco Holdings Corp.*,
 2022 UT App 71, 513 P.3d 94 ..................................................................................................6

*Meyer v. Uber Techs., Inc.*,
 868 F.3d 66 (2d Cir. 2017) ........................................................................................................6

*Mumin v. Uber Techs., Inc.*,
 239 F. Supp. 3d 507 (E.D.N.Y. 2017) .......................................................................................6

*Pac. Dev., L.C. v. Orton*,
 1999 UT App 217, 982 P.2d 94, aff'd in part, rev'd in part, 2001 UT 36, 23
 P.3d 1035 ..................................................................................................................................3

*Perry v. Thomas*,
 482 U.S. 483 490 (1987) ...........................................................................................................5

*Rent-A-Center, West, Inc. v. Jackson*,
 561 U.S. 63 (2010) ..................................................................................................................10

*Saizhang Guan v. Uber Techs., Inc.*,
 236 F. Supp. 3d 711 (E.D.N.Y. 2017) .......................................................................................6

*Salerno v. Credit One Bank, N.A.*,
 No. 15-CV-516, 2015 WL 6554977 (W.D.N.Y. Oct. 28, 2015) ...............................................8

*Sefton v. Hewitt*,
 791 N.Y.S.2d 873 (Civ. Ct. 2004) .............................................................................................6

*Sidney v. Verizon Commc'ns*,
 No. 17 CV 1850 (RJD) (RLM), 2018 WL 1459461 (E.D.N.Y. Mar. 23, 2018) .......................7

*Sokol Holdings, Inc. v. BMB Munai, Inc.*,
 542 F.3d 354 (2d Cir. 2008) ....................................................................................................11

*Velez v. Credit One Bank*,
 No. 15-CV-4752 (PKC), 2016 WL 324963 (E.D.N.Y. Jan. 25, 2016) ..................................5, 8

*Verizon N.Y. Inc. v. Broadview Networks, Inc.*
 781 N.Y.S.2d 211, 214 (N.Y. Cty. 2004) ..................................................................................8

*Wu v. Uber Techs., Inc.*,
 78 Misc. 3d 551 (N.Y. Sup. Ct. 2022) .......................................................................................7

*Zambrana v. Pressler & Pressler, LLP*,
 No. 16-CV-2907 (VEC), 2016 WL 7046820 (S.D.N.Y. Dec. 2, 2016)...................................11

**Statutes**

9 U.S.C. §§ 2, 4 ...................................................................................................5

FEDERAL ARBITRATION ACT ................................................................................1

UTAH CODE § 78B-11-107 .....................................................................................5

UTAH CODE § 78B-11-107(1) .................................................................................5

UTAH UNIFORM ARBITRATION ACT ...........................................................1, 3, 4, 5

Defendants[1] respectfully move to compel arbitration of Plaintiff Pratik Khowala's claims pursuant to Utah's Uniform Arbitration Act and the Federal Arbitration Act.

## I. INTRODUCTION

Plaintiff Pratik Khowala asserts claims arising out of a series of agreements between himself and Vivint, Inc. for installation and service of a home security system. Mr. Khowala claims the system "proved almost completely useless" when his home was broken into and burglarized by "a gang of organized criminals" who stole his luxury watch collection. According to Mr. Khowala, Vivint's home security system was defective because it failed to alert him to the break-in. In addition, Mr. Khowala claims that Defendants were negligent in installing and maintaining the system, and that Defendants breached certain warranties allegedly owed to Mr. Khowala.

Mr. Khowala's claims fail as a matter of law. As alleged in the Complaint, Mr. Khowala and Vivint have valid and enforceable written agreements governing their relationship and the subject of his claims: the home security system. Mr. Khowala's negligence and strict products liability claims sound in tort, so those tort claims are barred by New York's economic loss rule and the absence of any tort duty owed to him outside of the agreements. And as to Mr. Khowala's warranty claims, the parties' agreements expressly disclaim those warranties.

But regardless of their merits, Mr. Khowala's claims do not belong in this Court. The agreements contain mandatory arbitration provisions. And because the arbitration provisions are valid and enforceable, resolution of this suit's merits must be arbitrated according to their terms.

## II. FACTUAL & PROCEDURAL BACKGROUND

In August 2016, Plaintiff Pratik Khowala, CFO of Product and Engineering at Mastercard, entered into a Purchase and Service Agreement ("PSA") with Defendant Vivint, Inc. for the

---

[1] Vivint Smart Home, Inc. joins this motion subject to and without waiving its objections to the Court's personal jurisdiction for the reasons described in its premotion letter, ECF No. 12.

installation and service of a security system in his Westchester County home (the "2016 PSA"). The 2016 PSA was signed by Mr. Khowala and included an agreement to arbitrate "any controversy, dispute, or claim of any kind or nature between the parties…directly or indirectly arising out of, relating to, or in connection with the Agreement regardless of what legal theory … is used to allege or determine liability for the injury or loss." **Ex. A-1**, 2016 PSA, at ¶ 19. In tandem with the 2016 PSA, Vivint also issued a Certificate of Installation to Mr. Khowala on August 29, 2016, certifying that his home security system was installed and was subject to the terms and conditions of the 2016 PSA. **Ex. A-2**, Certificate of Installation.

Vivint is not in possession of Mr. Khowala's signed and executed 2016 PSA. But there is no doubt Mr. Khowala agreed to Vivint's 2016 PSA terms. Nor is there any doubt about exactly what those terms were because Vivint has the form contract it knows Mr. Khowala signed in 2016. *See* **Ex. A-1**.

As Vivint's Director of Service Revenue, Bryan Brothers, explains, Mr. Khowala necessarily signed the 2016 PSA attached to his declaration as Exhibit A-1. **Ex. A**, Brothers Decl., at ¶ 10. In 2016, Vivint had an agreement with a third-party call center, Vital, by which Vital would enroll potential customers and then schedule a Vivint technician to install a customer's home security system once they enrolled. *Id.* at ¶ 9. The Vivint technicians who installed these systems used a software system called "Tech Genie," which required the technicians to complete a task list in connection with the installation. *Id.* As part of the Tech Genie task list, Vivint technicians were required to obtain a signed and executed PSA from the customer. *Id.*

As Mr. Brothers explains, Mr. Khowala enrolled through Vital. *Id.* So, a representative from Vital enrolled Mr. Khowala and then scheduled a Vivint technician to install Mr. Khowala's home security system. *Id.* at ¶ 10. That Vivint technician used Tech Genie for the install and

2

completed all required Tech Genie tasks for the installation. *Id.* at ¶ 10. And because the Vivint technician completed the Tech Genie task list, Mr. Khowala necessarily signed and executed the PSA during installation in August 2016. *Id.*

Then, in July 2022, after receiving six years of service under the 2016 PSA, Mr. Khowala states that his home was broken into and burglarized. Compl. at ¶ 18. He alleges that the security system installed by Vivint failed to alert the police department to the break-in in sufficient time to stop it. *Id.* Mr. Khowala alleges that happened because Vivint was negligent in installing a glass break detector, which, if functioning properly, would have alerted the police department in the event of a break-in through the rear glass door in his home. *Id.* at ¶¶ 18–21, 24.

On July 15, 2022, about a week after the break-in, Mr. Khowala contracted with Vivint to continue his home security services (the "2022 PSA"). **Ex. A-3**, 2022 PSA. Just like the 2016 PSA, the 2022 PSA was signed by Mr. Khowala and contains an arbitration provision. *Id.* The arbitration provisions in the 2022 PSA and the 2016 PSA are identical in all material respects.[2]

Mr. Khowala then filed this Complaint against Vivint, Inc. and Vivint Smart Home, Inc. on February 8, 2023. He asserts state law claims for negligence, strict products liability, and breach of express and implied warranties.

### III. ARGUMENT & AUTHORITIES

The Court's role in deciding Defendants' motion is a narrow one. Both the Utah Uniform Arbitration Act and the FAA "leave[] no place for the exercise of discretion by a district court, but

---

[2] The 2016 PSA states that Utah state law will govern while the 2022 PSA states that the FAA will govern. **Ex. A-1** at ¶ 19; **Ex. A-3** at ¶ 19. However, because the Utah Uniform Arbitration Act is modeled after the FAA, there is no conflict between the provisions and the Court need not decide which agreement controls in order to grant Vivint's motion to compel. *See Ahhmigo, LLC v. Synergy Co. of Utah, LLC*, 2022 UT 4, ¶ 24, 506 P.3d 536, 541 (the FAA "serves as the model for the Utah Uniform Arbitration Act"); *see also Pac. Dev., L.C. v. Orton*, 1999 UT App 217, ¶ 6, 982 P.2d 94, 96, aff'd in part, rev'd in part, 2001 UT 36, ¶ 6, 23 P.3d 1035 ("[T]he provisions of the Utah Arbitration Act are nearly identical to those contained in the Federal Arbitration Act[.]").

3

instead mandate[] that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (italics in original). The Court's role is therefore limited to determining "(1) whether the parties have entered into a valid agreement to arbitrate, and if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011) (describing the court's role under the FAA); *see HITORQ, LLC v. TCC Veterinary Servs., Inc.*, 2021 UT 69, ¶ 24 (same under Utah's Uniform Arbitration Act). The Court must enforce the arbitration agreement if the answers are affirmative as to both questions.

Mr. Khowala's suit contravenes well-established state and federal principles mandating arbitration. The 2016 PSA is valid and enforceable, and broadly encompasses Mr. Khowala's claims. Defendants therefore readily satisfy each element necessary to compel arbitration and the Court should grant Defendants' motion.

**A.    The 2016 PSA is valid and its arbitration provision must be enforced.**

1. <u>Mr. Khowala entered into a valid agreement to arbitrate with Vivint in 2016.</u>

The first step in the two-part test requires the Court to determine whether the parties have entered into a valid agreement to arbitrate. *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d at 128; *HITORQ, LLC*, 2021 UT at ¶ 24. The Utah Uniform Arbitration Act provides that arbitration agreements generally shall be valid, irrevocable, and enforceable and permits a party to petition a federal district court for an order compelling arbitration as provided for in the agreement. Utah Code § 78B-11-107; *see also* 9 U.S.C. §§ 2, 4. By its terms, the Utah Uniform Arbitration Act, like the FAA, "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Byrd*, 470 U.S. at 218 (FAA); Utah

Code § 78B-11-107(1) ("The court *shall* decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate.") (emphasis added). As such, a liberal policy favors arbitration such that valid arbitration agreements must be "rigorously enforced." *Perry v. Thomas*, 482 U.S. 483 490 (1987) (cleaned up); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) ("The principal purpose of the FAA is to ensure that private arbitration agreements are enforced according to their terms.") (cleaned up); *see also Cent. Fla. Invs., Inc. v. Parkwest Assocs.*, 2002 UT 3, ¶ 16, 40 P.3d 599, 606 ("It is the policy of the law in Utah to interpret contracts in favor of arbitration, in keeping with our policy of encouraging extrajudicial resolution of disputes when the parties have agreed not to litigate.") (quotations omitted).

In determining whether arbitration agreements are valid, "courts should apply ordinary state-law principles that govern the formation of contracts[] and evaluate the allegations to determine whether they raise a genuine issue of material fact." *Aleksanian v. Uber Techs., Inc.*, 524 F. Supp. 3d 251, 263 (S.D.N.Y. 2021) (quotations omitted). The general principles of contract law dictate that "a party is bound by the provisions of a contract that he signs, unless he can show special circumstances that would relieve him of such an obligation." *Bynum v. Maplebear Inc.*, 160 F. Supp. 3d 527, 534 (E.D.N.Y. 2016) (quotations omitted). New York courts frequently find arbitration agreements to be valid. *See, e.g., Camilo v. Lyft, Inc.*, 384 F. Supp. 3d 435, 440 (S.D.N.Y. 2019); *Velez v. Credit One Bank*, No. 15-CV-4752 (PKC), 2016 WL 324963, at *6–7 (E.D.N.Y. Jan. 25, 2016). The party seeking to avoid arbitration bears the burden of demonstrating the agreement is invalid. *Harrington v. Atl. Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010).

Here, this first question (contract validity) is governed by New York law,[3] because that is

---

[3] Even if the Court were to determine that Utah's state contract law governs instead of New York, the outcome would be the same. Utah and New York apply substantially similar rules for

where the home security system is located, and it is the state with the most significant contacts with the dispute. *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73–74 (2d Cir. 2017) ("This question is determined by state contract law."); *see also Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507, 522 (E.D.N.Y. 2017) (stating that "[t]he places of contracting and performance are typically given the greatest weight" in determining which law applies to an agreement to arbitrate); *Saizhang Guan v. Uber Techs., Inc.*, 236 F. Supp. 3d 711, 722 (E.D.N.Y. 2017) (New York state law applied where the contract involved employment practices in New York, plaintiffs were drivers in New York, and plaintiffs' claims stemmed from the payment of New York tolls).

To form a valid contract in New York, the parties must have mutually assented to the terms of the contract. *See Spiezio*, 86 N.Y.S.3d at 185. And here, the question of whether the 2016 PSA contains a valid and enforceable agreement to arbitrate is easily resolved by Mr. Khowala's admission that the parties have "a valid and enforceable agreement." Compl. at ¶ 39. This concession should end the inquiry of whether a valid agreement to arbitrate exists—Mr. Khowala unequivocally concedes this fact.

And even without Mr. Khowala's admission, Vivint's records demonstrate that he signed and executed a valid and enforceable agreement in 2016. As Mr. Brothers explains, Mr. Khowala necessarily signed the 2016 PSA attached as Exhibit A-1 because, otherwise, the installation technician would not have been able to complete the Tech Genie task list that Vivint's records show was completed. **Ex. A**, Brothers Decl., at ¶ 10. The Vivint technician completed the Tech

---

determining whether the parties have mutually assented to a contract. *Compare Livingston v. Finco Holdings Corp.*, 2022 UT App 71, ¶ 14, 513 P.3d 94, 100 (mutual assent of the parties is a basic principle of contract law and mutual assent can be demonstrated by "words or actions or both") (quotations omitted), *with Can Man Carting, LLC v. Spiezio*, 86 N.Y.S.3d 182, 185 (2018) (mutual assent is required to form an enforceable contract); *see also Sefton v. Hewitt*, 791 N.Y.S.2d 873 (Civ. Ct. 2004) ("The manifestation of assent may take the form of written or spoken words (expressed contract) or of an act or failure to act (implied in fact contract)[.]").

Genie task list, so Mr. Khowala undoubtedly signed the 2016 PSA. *Id.*

In addition to signing the 2016 PSA, Mr. Khowala also received a Certificate of Installation in August 2016. *See* **Ex. A-2**, Certificate of Installation; **Ex. A** at ¶ 8. That Certificate notified him that his system was subject to the terms and conditions of the 2016 PSA and certified that Mr. Khowala's home security system was installed on August 29, 2016. **Ex. A-2**, Certificate of Installation; **Ex. A** at ¶ 8.

Moreover, Mr. Khowala accepted and assented to the terms of the 2016 PSA when he activated his security system and account with Vivint in or around August 2016, and Mr. Khowala's continued service with Vivint for more than six years bound him to the terms of that 2016 PSA. *See, e.g., Wu v. Uber Techs., Inc.*, 78 Misc. 3d 551, 596 (N.Y. Sup. Ct. 2022) (holding that plaintiff's "continued use of Uber's services after receiving the Arbitration Notice bound [plaintiff] to the Arbitration Agreement"); *Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825, 832 (S.D.N.Y. 2020) (holding that customer assented to arbitration provision in Postmates' terms of services and privacy policy when customer signed up for Postmates' service); *Sidney v. Verizon Commc'ns*, No. 17 CV 1850 (RJD) (RLM), 2018 WL 1459461, at *2 (E.D.N.Y. Mar. 23, 2018) (finding that plaintiff accepted the terms of the parties' contract by initiating service and opening his account with defendant). The contractual terms Mr. Khowala accepted included a provision subjecting his claims to mandatory arbitration. *See* **Ex. A-1**, 2016 PSA, at ¶ 19. There is no evidence to suggest he did not accept the terms of the 2016 PSA. Quite the contrary, Mr. Khowala admits that he entered into a binding and enforceable agreement with Vivint.[4] Compl. at ¶ 39.

---

[4] To the extent Mr. Khowala argues that he failed to read or understand the terms of the 2016 PSA, such argument would fail as a matter of law. *See Salerno v. Credit One Bank, N.A.*, No. 15-CV-516, 2015 WL 6554977, at *910 (W.D.N.Y. Oct. 28, 2015) (a plaintiff is bound by an arbitration agreement even if she argues she did "not recall ever receiving it"); *see also Velez v.*

7

In short, the evidence unequivocally demonstrates that Mr. Khowala entered a valid and enforceable agreement with Vivint when he signed the 2016 PSA—as he concedes. *See* **Exs. A**, **A-1**, and **A-2**; Compl. ¶ 39. For the next six years, Mr. Khowala maintained an active home security system with Vivint and received continuous service from Vivint. Accordingly, the 2016 PSA, including the arbitration provision, is valid and enforceable.

2. <u>Mr. Khowala's claims are subject to the 2016 PSA's arbitration provision.</u>

The second step in the two-part test asks the court to determine whether the parties' dispute comes within the scope of their arbitration agreement. *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d at 128; *HITORQ, LLC*, 2021 UT at ¶ 24. The language of the arbitration provision dictates whether the dispute arises under the scope of the arbitration agreement. For example, in *Camilo v. Lyft, Inc.*, the arbitration provision stated that arbitration would be required for "ALL DISPUTES AND CLAIMS BETWEEN US." 384 F. Supp. 3d 435, 440 (S.D.N.Y. 2019). The arbitration provision further defined "Disputes" as those arising from Lyft's terms of services. *Id.* So, that court held that the plaintiff's claims for breach of contract, unjust enrichment, fraud, and statutory violations fell within the scope of the arbitration provision because his claims all arose from Lyft's terms of services. *See id.* And in *Verizon N.Y. Inc. v. Broadview Networks, Inc.*, the Court held that "[t]he dispute which Verizon seeks to have arbitrated clearly falls within the broad scope of the arbitration agreement contained in the Interconnection Agreement, because it is a dispute 'arising out of [the Interconnection] Agreement or its breach.'" 781 N.Y.S.2d 211, 214 (N.Y. Cty. 2004).

So too here. The 2016 PSA's arbitration provision unequivocally states that arbitration is required for "any controversy, dispute, or claim of any kind or nature between the parties…directly

---

*Credit One Bank*, No. 15-CV-4752 (PKC), 2016 WL 324963, at *4 (E.D.N.Y. Jan. 25, 2016) (plaintiff agreed to arbitration provision even if plaintiff failed to read the terms of the contract because plaintiff continued to use and make payments on defendant's credit card).

or indirectly arising out of, relating to, or in connection with the Agreement regardless of what legal theory … is used to allege or determine liability for the injury or loss." **Ex. A-1**, at ¶ 19. The language in the arbitration provision is broad, applying to any claims related to the PSA, including breach of the PSA.

The 2016 PSA broadly governs the installation and service of Mr. Khowala's home security system. *See* **Ex. A-1** *generally*. Mr. Khowala's Complaint alleges that his home security system was defective, that Vivint was negligent in installing and testing it, and that Vivint breached warranties stemming from its agreement with Mr. Khowala. Compl. at ¶¶ 22–42. These claims clearly fall within the scope of the 2016 PSA—indeed they arise *entirely* out of the 2016 PSA. Accordingly, the Court should grant Defendants' motion to compel because the 2016 PSA is valid and enforceable, and Mr. Khowala's claims fall within the scope of its arbitration provision. The two-part arbitrability test is satisfied. *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.2d at 128; *HITORQ, LLC*, 2021 UT at ¶ 24.

**B.  If the Court finds there is a question about whether Mr. Khowala agreed to the 2016 PSA, the 2022 PSA's arbitration provision mandates the same result.**

Mr. Khowala has forecast his intent to deny signing the 2016 PSA. *See* ECF No. 13. But the evidence Vivint has presented shows that simply is not true. *See* **Ex. A**, Brothers Decl., at ¶¶ 9–10. The 2016 PSA's arbitration provision is valid and enforceable for the reasons discussed.

But the Court need not resolve that debate because, if Mr. Khowala did not sign the 2016 PSA (he did), then the 2022 PSA would be the only valid and signed agreement between the parties and would govern this dispute. And if the 2022 PSA governs, the Court must delegate the threshold question of arbitrability to the arbitrator. It is well established that "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, West, Inc. v. Jackson*,

561 U.S. 63, 68–69 (2010) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–85 (2002)). Here, the parties agreed in the 2022 PSA to submit the question of arbitrability to the arbitrator:

> sadr.com/consumer-minimum-standards/. The arbitration shall be held in the location where you live, in Utah, or any other location agreed upon by the parties. The arbitrator shall decide issues of arbitrability of claims and shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement. The arbitrator is bound by the terms of this Agreement as it relates to available damages and other limitations. Judgment on the arbitration award may be entered in any court having jurisdiction. You may opt out of this arbitration clause by providing notice

**Ex. A-3**, at ¶ 19. Accordingly, the Court should not determine the question of arbitrability under the 2022 PSA.

And even if the Court determines it should address arbitrability under the 2022 PSA, the two-part test is easily satisfied with respect to this agreement too. There is no dispute that Mr. Khowala voluntarily entered the 2022 PSA. *See* **Ex. A-3**; *see also* **Ex. A**, at ¶ 11. Mr. Khowala is therefore unquestionably bound by its terms, including its mandatory arbitration provision. *See Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir.2004); *see also Allstate Ins. Co. v. Am. Home Prod. Corp.*, No. 01 Civ. 10715(HBP), 2010 WL 1257337, at *8 (S.D.N.Y. Mar. 31, 2010) (holding that a person who signs a contract is presumed to accept and understand its contents and be bound by its terms and conditions).

The 2022 PSA also supersedes any prior agreements by its terms:

> 20. Entire Agreement. The entire and only agreement between us is written in this Agreement, including any schedule of equipment and services or retail installment contract. It replaces any earlier oral or written understanding or agreements. It may not be changed by any oral statements or representations made by our representatives. It may only be changed by mutual agreement between you and us. If you have given or ever give us a purchase order for the System or service which provides for different terms than this Agreement, this Agreement will govern and be controlling. If any provision of this Agreement is found to be invalid or illegal by a court, the balance of the Agreement shall remain in force. You agree that we may save and store all contracts and other documents executed by you in an electronic media, and all such contracts and other documents shall be given the same force and effect as the paper form originals.

**Ex. A-3**, at ¶ 20.

Because the 2022 PSA is valid and enforceable, and because it also contains a mandatory arbitration provision, Mr. Khowala's claims are subject to arbitration. The Court should grant Defendants' motion to compel.

C. **The claims against Vivint Smart Home, Inc. are also subject to arbitration, regardless of which PSA controls**.

Finally, Mr. Khowala should be compelled to arbitrate his claims against both Vivint entities under the 2016 PSA and the 2022 PSA. Although Mr. Khowala did not contract with Vivint Smart Home, Inc., those claims are subject to arbitration because they are "intertwined with the contract providing for arbitration" and the parties' relationship would make it inequitable for Mr. Khowala "to refuse to arbitrate on the ground that [he] … made no agreement with [Vivint Smart Home, Inc.]." *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 361 (2d Cir. 2008); *see also Gartly v. Selip & Stylianou LLP*, No. 1:18-CV-1806 (ARR) (VMS), 2018 WL 5777033, at *6 n.4 (E.D.N.Y. Nov. 2, 2018) (explaining that defendants had "a colorable argument that the plaintiff would be estopped from avoiding arbitration of his claims against [co-defendant]"); *see also Zambrana v. Pressler & Pressler, LLP*, No. 16-CV-2907 (VEC), 2016 WL 7046820, at *6 (S.D.N.Y. Dec. 2, 2016) (allowing non-signatories to enforce the arbitration provision).

Moreover, Mr. Khowala's allegations against Vivint Smart Home, Inc. are identical to his allegations against Vivint, Inc. He alleges that Vivint Smart Home, Inc. (and Vivint, Inc. collectively as "the Vivint Defendants") was negligent in installing and testing his home security system, that the home security system was defective, and that Vivint Smart Home, Inc. breached warranties stemming from Mr. Khowala's agreements with Vivint, Inc. Compl. at ¶¶ 22–42. These claims arise entirely from Mr. Khowala's agreements with Vivint, Inc. containing mandatory arbitration provisions—i.e., the 2016 PSA and the 2022 PSA.

Compelling Mr. Khowala's claims against Vivint Smart Home, Inc. to arbitration is also appropriate as a matter of contract interpretation. Indeed, neither PSA's arbitration clause is limited to claims against only the contracting parties. Rather, the arbitration clauses broadly encompass claims involving the contracting parties' "affiliates" like Vivint Smart Home, Inc. *See* **Exs. A-1**,

**A-3**; *see also Gartly*, 2018 WL 5777033, at *6 n.4 (arbitration provision encompassing claims against "third party . . . in a claim which is subject to th[e] arbitration provision" likely required claims against third party to be compelled "as a simple matter of contract interpretation" as well as on equitable grounds). As discussed, Mr. Khowala's claims against the so-called "Vivint Defendants" all fall within the scope of the PSAs' arbitration clauses, so the two-part test is satisfied as to Vivint Smart Home as well.

Accordingly, Mr. Khowala's claims against both Vivint, Inc. and Vivint Smart Home, Inc. must be compelled to arbitration.

## IV. Conclusion & Prayer

The 2016 and 2022 PSAs contain valid, enforceable arbitration provisions covering all claims asserted in Mr. Khowala's Complaint against Defendants. In light of the applicable law binding Mr. Khowala to the agreements, Defendants respectfully request that the Court grant their motion and order that Mr. Khowala's claims be compelled to arbitration.

Dated: May 24, 2023

McDowell Hetherington LLP

*/s/ Michael D. Matthews, Jr*
Michael D. Matthews, Jr.
Diane S. Wizig*
McDowell Hetherington LLP
1001 Fannin Street, Suite 2400
Houston, Texas 77002
Telephone: (713) 337-5580
Facsimile: (713) 337-8850
matt.matthews@mhllp.com
diane.wizig@mhllp.com

*Attorneys for Defendants Vivint Smart Home, Inc. and Vivint, Inc.*

*pro hac vice application forthcoming

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing has been served on the 24th day of May, 2023 via CM/ECF on all counsel of record.

/s/*Michael D. Matthews, Jr.*
Michael D. Matthews, Jr.