UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**Case No. 23-cv-010608-AT**

PRATIK KHOWALA,

                Plaintiff,

v.

VIVINT SMART HOME, INC. & VIVINT, INC.,

                Defendants.

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION VIVINT'S MOTION TO COMPEL ARBITRATION**

BELLUCK & FOX, LLP
546 Fifth Avenue, 5th Floor
New York, New York 10036
T: 212.681.1575
F: 212.681.1574

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

i

# **TABLE OF AUTHORITIES**

**Cases**

*1537 Assocs. v. Temlex Indus., Inc.*, 128 A.D.2d 384 (1st Dept. 1987) ......................................... 9

*Abramowitz v. New York Univ. Dental Ctr., Coll. of Dentistry*, 110 A.D.2d 343 (1985) .............. 8

*AT & T Techs. v. Communications Workers of America*, 475 U.S. 643 (1986) ............................ 3

*Atwater & Co. v. Panama R.R. Co.*, 246 N.Y. 519 (1927) ............................................................. 6

*Bensadoun v. Jobe-Riat*, 316 F.3d 171 (2d Cir. 2003) ................................................................... 3

*CMMF, LLC v. J.P. Morgan Inv. Mgmt., Inc.*, 43 Misc. 3d 1226(A) (N.Y. Sup. 2013) ................. 8

*Consol. Edison Co. of New York, Inc. v. ACE Am. Ins. Co.*, No. 1:21-CV-9216-GHW, 2023 WL 3569273 (S.D.N.Y. May 18, 2023)........................................................................................... 4

*Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Management, L.P.*, 7 N.Y.3d 96 (2006)........................................................................................................................................ 8

*Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005) ............................................................ 4

*John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48 (2d Cir. 2001) ................................................ 3

*Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2d Cir. 2016) ............................................................ 3

*Priceless Custom Homes, Inc. v. O'Neill*, 104 A.D.3d 664 (1st Dept. 2013) ................................. 3

*Riverside S. Plan. Corp. v. CRP/Extell Riverside, L.P.*, 13 N.Y.3d 398 (2009) ............................. 6

**Statutes**

9 U.S.C. § 4 ...................................................................................................................................... 3

**PRELIMINARY STATEMENT**

At bar, Vivint points to a 2016 agreement, what it calls the "2016 PSA," which allegedly contains not only an arbitration provision, but also a limitation of liability provision that purports to limit its liability to two thousand dollars ($2,000). Thus, while styled as a motion to compel arbitration, Vivint's motion, for all practical purposes, amounts to a summary judgment motion as to liability as well.

Respectfully, however, Vivint's motion should not be a difficult motion for the Court to decide. Under controlling legal authority, a motion to compel arbitration must be decided in the same manner as a summary judgment motion and the moving party bears the burden of proving the absence of any genuine issue of material fact regarding whether there is an explicit agreement to arbitrate.

Here, however, Mr. Khowala swears under oath that he did not sign the 2016 PSA and was never provided a copy of it. Moreover, despite having numerous signed documents from Mr. Khowala in its possession, Vivint admittedly has only an unsigned copy of the 2016 PSA in its possession, further confirming that Mr. Khowala did not sign the 2016 PSA.

Nevertheless, contrary to the above facts and evidence showing otherwise, Vivint simply pronounces that Mr. Khowala signed the 2016 PSA based upon the hearsay declaration of one Mr. Bryan Brothers, who admittedly has no firsthand personal knowledge of any of the transactions between Vivint and Plaintiff Pratik Khowala. Specifically, Mr. Brothers states that he reviewed business records and, based solely on his review of said hearsay documents, conjectures that Mr. Khowala must have signed the 2016 PSA. Stated differently, Vivint impermissibly asks this Court to resolve a credibility question in its favor. Worse, it asks this Court to decide the question on an incomplete record because no discovery has yet occurred.

Notably, Vivint has not even produced the business records that Mr. Brothers allegedly reviewed. Nor does Mr. Brothers even attempt to explain why, if Mr. Khowala signed the 2016 PSA, it would have been necessary for Mr. Khowala to sign a PSA in July 2022. Without a doubt, Vivint's business records contain the answer to that question: that Vivint knows full well that Mr. Khowala did not sign the 2016 PSA, which is the whole reason they made him sign one in 2022 following the burglary at his property.

The arbitrability of a dispute depends on whether there is a valid contract to arbitrate, which is a matter for the Court to consider in the first instance. And, given the factual dispute regarding whether Mr. Khowala even signed the arbitration agreement in the first instance, it is respectfully contended that Vivint has not carried its burden of demonstrating the arbitrability of this matter and that the Court should deny Vivint's motion to compel arbitration in its entirety.

## **COUNTERSTATEMENT OF FACTS**

Given the procedural posture of this case, Plaintiff refers the Court to his Complaint ("Compl.") in this matter for a recitation of the facts, ECF Docket "Dkt." No. 1, and gives only a brief counterstatement of those facts germane to the instant motion to compel arbitration.

In 2016, Vivint—either Vivint Smart Home, Inc. or Vivint, Inc. or both—installed a security system in Plaintiff's home. Compl. ¶ 10, ECF Docket "Dkt." No. 1. Vivint did so without Mr. Khowala first signing what it refers to as its Products and Services Agreement ("2016 PSA"). Declaration of Pratik Khowala dated June 13, 2023, annexed hereto as **Exhibit 1**. Thereafter, for approximately six (6) years, Vivint serviced, inspected, and/or maintained said security system. Compl. ¶ 16. At no point prior to this litigation did Vivint provide Mr. Khowala with the 2016 PSA. **Ex. 1**, ¶ 4.

**ARGUMENT**

As set forth herein, Mr. Khowala's respectfully contends that there is a factual dispute regarding whether he even signed the 2016 PSA which precludes the relief sought by Vivint in its motion to compel arbitration. Additionally, as set forth herein, the 2022 PSA does not dictate arbitration for the reasons set forth below. These points are addressed below.

I. **FACTUAL QUESTIONS PRECLUDE ARBITRATION HERE**

Where, as here, there is a factual dispute as to whether there is a valid agreement to arbitrate in the first place, the question of arbitrability is a question of fact for the Court to decide, not the arbitrator. *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) ("The case law is clear, however, that '[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.'") (quoting *John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48, 53 (2d Cir. 2001) (quoting *AT & T Techs. v. Communications Workers of America*, 475 U.S. 643, 649 (1986))) (internal quotations omitted); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 238 n. 7 (2d Cir. 2016).[1]

In determining whether the parties have entered into an agreement to compel arbitration, "the court applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun*, 316 F.3d 175 (citations omitted). "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Id.* (citing 9 U.S.C. § 4).

In determining whether there is a valid agreement to arbitrate, this Court must apply state law contract-formation principles. *Nicosia*, 834 F.3d at 231. In New York, whether an unsigned

---

[1] Vivint also appears to suggest that the work orders signed by Mr. Khowala, Def.'s Ex. A-4, somehow put him on notice of the 2016 PSA's arbitration provision. However, these work orders neither reference the 2016 PSA nor any arbitration provision and do not, as a matter of law, resolve the factual question of whether there was an agreement to arbitrate. *See Nicosia*, 834 F.3d 220, 238 n. 7 ((holding that whether electronic notification put consumer on notice of arbitration provision was factual question for jury to determine).

3

document constitutes a valid and enforceable contract is necessarily a question of fact that must be determined at trial. *See, e.g.*, *Priceless Custom Homes, Inc. v. O'Neill*, 104 A.D.3d 664, 665 (1st Dept. 2013) (affirming denial of summary judgment motion and explaining that "whether a particular unsigned document constituted an enforceable agreement between the parties, will be in dispute at trial" and that trial court must examine parties' intent as expressed by "objective evidence" actions of the parties) (citations omitted).

In that regard, the Declaration of Pratik Khowala dated June 13, 2023, submitted with this Memorandum of Law as **Exhibit 1**, makes clear that he did not execute the 2016 PSA and never had a copy of it. **Ex. 1**, ¶¶ 4–5. Under these circumstances, a reasonable juror could easily conclude with Mr. Khowala that he did not sign the 2016 PSA. It is simply a reality of modern business that companies often neglect their own procedures and offer goods and services to consumers without first requiring the consumer to first sign a form contract. This appears to be what transpired here.

Vivint, for its part, impermissibly asks the Court to resolve this credibility determination in its favor. *Cf. Consol. Edison Co. of New York, Inc. v. ACE Am. Ins. Co.*, No. 1:21-CV-9216-GHW, 2023 WL 3569273, at *7 (S.D.N.Y. May 18, 2023) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.") (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citations and quotations omitted). Specifically, it asks the Court to credit Mr. Brother's opinion that he believes, based upon his review of Vivint's business records, including "Tech Genie" records, that Mr. Khowala would likely have signed the 2016 PSA. Specifically, Mr. Brothers states that, according to Tech Genie, because an unnamed service technician who was sent to Mr.

4

Khowala's home was given a checklist telling him to collect a signature, he must have obtained a signed copy of the 2016 PSA.  Def.'s Ex. A, ¶ 9.

Mr. Khowala respectfully submits that Mr. Brothers' affidavit is hardly conclusive in any event.  At best, it establishes that an unnamed Vivint technician was told to collect a signature from Mr. Khowala in 2016.  Absent from Vivint's factual presentation on this motion is the actual "Tech Genie" checklist with the tasks marked off as completed or not and thus there is no way to know whether Mr. Brother's assertions in this regard are accurate.  Likewise, it appears that Mr. Brothers did not even bother to speak with said unnamed technician.

In fact, the only tangible evidence as to whether said unnamed technician actually performed the task he was asked to do or not, *i.e.* obtain a signed copy of the 2016 PSA, is the *unexecuted* copy offered by Vivint which corroborates Mr. Khowala's version of events and refutes Vivint's assertions.  Perhaps this is why Vivint's business records are not included in Vivint's motion submission.

Or perhaps they were not produced because there are other statements in these documents that are harmful to Vivint's factual contentions.  For example, it is easy to envision a notation following the July 2022 loss that because Mr. Khowala did not sign the 2016 PSA, he should be required to do so.  Regardless, Vivint's position that Mr. Khowala signed the PSA in 2016 appears inconsistent with the fact that he was required to sign one in July 2022 following the loss.  It would be unfair to decide this factual question on an incomplete record without first giving Mr. Khowala the opportunity to review Vivint's records in discovery and the opportunity to test Vivint's seemingly dubious factual assertions.

In sum, Vivint's self-serving pronouncements cannot sustain its burden of proving that Mr. Khowala signed the 2016 PSA, particularly in light of the evidence presented that Mr.

Khowala did not sign it. Under these circumstances, Mr. Khowala is entitled to a jury trial on whether he actually signed the 2016 PSA because a reasonable juror could easily find that he did not.

## II. THE 2022 PSA IS A RED HERRING AND DOES NOT DICTATE ARBITRATION HERE

Perhaps acknowledging that it cannot carry its burden of establishing that Mr. Khowala signed the 2016 PSA, Vivint contends that even if Mr. Khowala did not sign the 2016 PSA, the 2022 PSA requires arbitration as well. This contention fails as a matter of law for two (2) main reasons, however.

### A. By its plain language, the 2022 PSA is not retroactive and does not require arbitration of claims accruing prior to its execution date.

Under New York law, a court should interpret a contract as a whole and not focus solely on any one provision in isolation. *E.g.*, *Riverside S. Plan. Corp. v. CRP/Extell Riverside, L.P.*, 13 N.Y.3d 398, 404 (2009) (citing *Atwater & Co. v. Panama R.R. Co.*, 246 N.Y. 519, 524 (1927)). Yet notwithstanding this black-letter law, Vivint fixates on a single provision found in the 2022 PSA, but ignores critical language in said provision:

> 19. ARBITRATION CLAUSE AND CLASS ACTION WAIVER – PLEASE REVIEW CAREFULLY AS THIS IMPACTS YOUR LEGAL RIGHTS. EACH PARTY AGREES TO BINDING ARBITRATION AS THE SOLE AND EXCLUSIVE REMEDY FOR ANY CONTROVERSY, DISPUTE, OR CLAIM OF ANY KIND OR NATURE BETWEEN THE PARTIES AND THEIR RESPECTIVE AFFILIATES, ***DIRECTLY OR INDIRECTLY ARISING OUT OF, RELATING TO, OR IN CONNECTION WITH THIS AGREEMENT*** REGARDLESS OF WHAT LEGAL THEORY (INCLUDING WITHOUT LIMITATION, NEGLIGENCE, FRAUD, BREACH OF CONTRACT, BREACH OF WARRANTY OR PRODUCT LIABILITY, OR ANY OTHER THEORY OF LIABILITY) IS USED TO ALLEGE OR DETERMINE LIABILITY FOR THE INJURY OR LOSS.

Def.'s Ex. A-3. Therefore, by its plain language, the above 2022 arbitration agreement only applies to disputes pertaining to "this agreement," meaning the products and services described in said contract on page 1.

Moreover, the 2022 PSA makes clear that "this agreement" could not possibly encompass the products and services provided Mr. Khowala prior to July 2022. For instance, the first page of the form contract states that "THIS AGREEMENT is made and entered into this 15th day of Jul [sic] 2022 by and between Vivint, Inc. ("Vivint," "we," "us," or "our") and Pratik Khowala." Def.'s Ex. A-3, at p. 1. On the first page, it further states in bold letters that:

> **THE INITIAL TERM STARTS ON THE DAY THIS AGREEMENT IS SIGNED. AFTER THE INITIAL TERM, THIS AGREEMENT WILL AUTOMATICALLY CONTINUE MONTH-TO-MONTH AND EITHER PARTY MAY TERMINATE THIS AGREEMENT AT ANY TIME AFTER THE INITIAL TERM UPON AT LEAST THIRTY (30) DAYS' PRIOR WRITTEN NOTICE TO THE OTHER PARTY. IF TERMINATED, THIS AGREEMENT ENDS ON THE LAST DAY OF THE THIRTY (30) DAY NOTICE PERIOD.**

*Id.* Simply put, there can be question that the 2022 PSA became effective as of July 15, 2022 and was prospective and not retroactive in nature.

It is anticipated that Vivint will direct the Court to the merger clause, which is Paragraph 20 in the 2022 PSA to argue that the 2022 PSA requires arbitration of his claims which accrued as of July 7, 2022:

> 20. Entire Agreement. The entire and only agreement between us is written in this Agreement, including any schedule of equipment and services or retail installment contract. It replaces any earlier oral or written understanding or agreements. It may not be changed by any oral statements or representations made by our representatives. It may only be changed by mutual agreement between you and us. If you have given or ever give us a purchase order for the System or service which provides for different terms than this Agreement, this Agreement will govern and be

7

> controlling. If any provision of this Agreement is found to be invalid or illegal by a court, the balance of the Agreement shall remain in force. You agree that we may save and store all contracts and other documents executed by you in an electronic media, and all such contracts and other documents shall be given the same force and effect as the paper form originals.

Def.'s Ex. A-3, at p. 3.

At best, this language provides that the 2022 PSA supersedes prior agreements, but does not provide that the 2022 PSA somehow works retroactively to bring the parties' six (6) year business relationship within the scope of the 2022 PSA's arbitration clause because the 2022 PSA clearly provides that its "INITIAL TERM" begins on July 15, 2022, *i.e.* after the July 7, 2022 loss.

### B. Vivint's interpretation of the 2022 PSA as effectively releasing it from liability violates several principles of New York law.

Aside from the plain language of the 2022 PSA, Vivint's interpretation of the 2022 PSA as requiring arbitration—and limiting Vivint's liability to two thousand dollars ($2,000)—would be repugnant to New York law for several reasons.

**First**, the 2022 PSA is a form consumer contract. Under New York law, such consumer contracts are "always subjected to the closest of judicial scrutiny and will be strictly construed against their drawer." *Abramowitz v. New York Univ. Dental Ctr., Coll. of Dentistry*, 110 A.D.2d 343, 345 (1985) (citations omitted). To somehow read the merger clause found in "fine print" of the 2022 PSA as (1) requiring arbitration of Mr. Khowala's claims that accrued prior to its "INITIAL TERM" beginning July 15, 2022; and (2) releasing Mr. Khowala's claims worth in excess of three hundred thousand dollars ($300,000) by virtue of the 2022 PSA's exculpatory provisions, would work an unconscionable injustice on Mr. Khowala. Vivint's interpretation of the 2022 PSA should therefore be rejected in favor of a plain language interpretation by which

8

the 2022 PSA would only require arbitration of claims pertaining to goods and services provided under the 2022 PSA.

**Second**, Vivint argument that by signing the 2022 PSA, with its arbitration clause and its exculpatory provision, Mr. Khowala unwittingly (1) released his claims worth in excess of three hundred thousand dollars ($300,000) and also (2) forfeited his right to have a jury hear his claims pertaining his 2016 agreement with Vivint also violates the "clearly established principle of New York law that a waiver must be knowing, clear and unequivocal. It cannot be implied through an opaque set of circumstances and its consequences imposed on an unsuspecting contracting party. . . . There are no surprise waivers in New York." *CMMF, LLC v. J.P. Morgan Inv. Mgmt., Inc.*, 43 Misc. 3d 1226(A) (N.Y. Sup. 2013) (citing *Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Management, L.P.*, 7 N.Y.3d 96 (2006)). In short, to hold that Mr. Khowala inadvertently and unintentionally waived his claims against Vivint and also his procedural right to a jury trial on July 15, 2022 after these claims had already accrued on July 7, 2022 would amount to no less than a "surprise waiver"—particularly where *Mr. Khowala paid Vivint* and not the other way around.

Moreover, the question of whether a party waived his rights is necessarily a factual question which cannot be decided on a motion like this one. *E.g.*, *1537 Assocs. v. Temlex Indus., Inc.*, 128 A.D.2d 384, 387 (1st Dept. 1987). Therefore, at best, Vivint's assertions regarding the import of the 2022 PSA raise a factual question as to whether Mr. Khowala knowingly and voluntarily waived his substantive and procedural rights vis-à-vis his claims against Vivint which accrued on July 7, 2022.

In sum, Plaintiff respectfully urges that this Court should reject Vivint's crabbed interpretation of the 2022 PSA as contrary to well-established principles of New York law in

9

favor of a plain language interpretation whereby the 2022 PSA only applies to the goods and services offered by Vivint under this later contract, which have nothing to do with Plaintiff's claims arising from the parties' relationship beginning six (6) years earlier.

## **CONCLUSION**

For the foregoing reasons, Plaintiff Pratik Khowala respectfully urges this Court to deny Vivint's motion to compel arbitration in its entirety.

Dated: New York, New York  
       June 14, 2023

Respectfully submitted,

BELLUCK & FOX LLP

 /s/ Daniel Belzil  
Daniel R. Belzil  
546 Fifth Avenue, 5th Floor  
New York, New York 10036  
T: 212.681.1575  
F: 212.681.1574  
dbelzil@belluckfox.com

*Attorneys for Plaintiff*