```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
Pratik Khowala,

                     Plaintiff,

-against-

Vivint Smart Home, Inc. and Vivint, Inc.,

                     Defendants.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _9/29/2025_
```

23 Civ. 1068 (AT)

**ORDER**

ANALISA TORRES, District Judge:

    Plaintiff, Pratik Khowala, brings this action against Defendants, Vivint Smart Home, Inc. and Vivint, Inc. (collectively, "Vivint"), alleging negligence, products liability, and breach of contract claims following a burglary at Khowala's home. Compl. ¶¶ 1, 22–42, ECF No. 1; *see generally id.* By order dated August 1, 2024, and on a limited evidentiary record, this Court denied Vivint's first motion to compel arbitration under the Federal Arbitration Act ("FAA") without prejudice to renewal, on the basis that Vivint had not produced enough evidence to suggest that an arbitration agreement had been formed between the parties. *See* First Mot., ECF No. 17; Order Denying Mot. at 4–6, ECF No. 25. The Court then opened limited jurisdictional discovery into the question of whether the parties had entered into an arbitration agreement. *See* Order Denying Mot. at 9.

    Vivint now renews its motion to compel arbitration, arguing that the evidence shows that Khowala signed a System Purchase and Services Agreement in 2016 (the "2016 PSA"). *See* Def. Mem. at 1, ECF No. 30; *see also* 2016 PSA, ECF No. 30-2. Khowala opposes, contending that the evidence consists only "of a notation in [Vivint's] records . . . that *someone* signed the 2016 PSA," rather than Khowala. *See* Pl. Mem. at 4–5, ECF No. 32. For the reasons stated below, Vivint's motion to compel arbitration is GRANTED.

## BACKGROUND

The Court assumes familiarity with the facts underlying this action. *See* Order Denying Mot. at 2–4. In brief, Khowala alleges that Vivint's negligence in installing Vivint's security system in Khowala's home caused the system to fail to alert law enforcement officers when his home was burglarized in 2022. *See id*. at 1–2. Vivint argues that the 2016 PSA requires arbitration of the instant dispute and that Khowala either signed the 2016 PSA or "reaffirmed" it in his subsequent dealings with Vivint. *See* Def. Mem. at 8.

Vivint's renewed motion cites numerous exhibits that were not produced as part of its first motion, including a set of screenshots of "Salesforce," an online software that Vivint uses to manage customer data, and a business record concerning Vivint's "Post-Install Survey," a survey that an off-site Vivint technician typically conducts with new customers at the time of Khowala's service installation. *See* Brothers Dep. 17:4–11, 46:2–15, ECF No. 32-4; *compare generally* Brothers Decl., ECF No. 30-1, *with* First Brothers Decl., ECF No. 17-1. The Salesforce records include three screenshots of Vivint's Salesforce interface, the first of which contains several "billing details," Khowala's name, and an entry of "8/29/2016 2:52 PM" in a field marked "Digital Contract Signed Date." ECF No. 30-3 at 1. The second screenshot contains Khowala's name as an entry in a field marked "Contract Signer," ECF No. 30-4 at 1, and the third screenshot lists Khowala's "Original Service Activation Date" as August 29, 2016, at 2:59 p.m., ECF No. 30-6 at 1. The Post-Install Survey data reports Khowala's "Survey Pass Date" as 2:50 p.m. on August 29, 2016. ECF No. 30-5 at 1, Brothers Decl. ¶ 10. As relevant here, the parties dispute the deposition testimonies of Khowala, Khowala Dep., ECF No. 32-3, and Bryan Brothers, a Vivint employee who currently serves as Director of Service Revenue and previously served as Director of Account Creation, Brothers Decl. ¶ 3, and the significance of a series of Vivint "Work Orders" that record technician visits to Khowala's home, ECF No. 32-2.

**DISCUSSION**

I.    <u>Legal Standard</u>

The FAA provides that arbitration agreements in contracts involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The statute reflects a "federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quotation marks omitted).

Under the FAA, parties can petition a district court for an order directing that "arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The district court must stay proceedings and direct the parties to proceed to arbitration once it is "satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding." *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997) (quoting *McMahan Sec. Co. v. Forum Cap. Mkts. L.P.*, 35 F.3d 82, 85 (2d Cir. 1994)); *Alonso v. Maggies Paratransit Corp.*, 203 F. Supp. 3d 244, 246 (E.D.N.Y. 2016); *see* 9 U.S.C. §§ 3, 4.

To determine whether parties have agreed to arbitrate a dispute, courts first consider whether an arbitration agreement was actually formed, a question governed by state law: here, the law of New York. *See Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 99 (S.D.N.Y. 2015); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73–74 (2d Cir. 2017); *Barrows v. Brinker Restaurant Corp.*, 36 F.4th 45, 50 (2d Cir. 2022) ("[W]e resolve such agreement-formation questions as we would most any contract dispute: by applying the law of the state at issue."); Order Denying Mot. at 3 & n.1.[1] The "initial burden of demonstrating that an agreement to arbitrate was made" lies with the party seeking to

---

[1] The parties agree that New York state law applies to the question of contract formation. *See* Def. First Mot. Mem. at 5, ECF No. 17; Pl. Opp. at 3–4, ECF No. 18. Vivint's suggestion that Utah law may govern this dispute, Def. Mem. at 11–12 & n.2., is belied by its earlier concession, and, in any event, irrelevant to the question at issue.

compel arbitration. *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101–02 (2d Cir. 2022).

In evaluating factual disputes relevant to a motion to compel arbitration, courts must apply a "standard similar to that applicable for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F. 3d 171, 175 (2d Cir. 2003). Accordingly, in assessing Vivint's motion to compel arbitration, this Court must "consider all relevant, admissible evidence . . . [and] draw all reasonable inferences in favor of [Khowala]." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016). If there then remains any "issue of fact as to the making of the agreement for arbitration," the FAA requires that the non-movant is entitled to a jury trial. *Bensadoun*, 316 F.3d at 175 (citing 9 U.S.C. § 4); *Nicosia*, 834 F.3d at 229. On the other hand, if "undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law," a court may compel arbitration and "avoid the need for further court proceedings." *Meyer,* 868 F.3d at 74.

II.   Analysis

In its motion, Vivint argues that the 2016 PSA requires arbitration of the instant dispute, either because new evidence revealed during the limited discovery shows that Khowala did sign the 2016 PSA, or because Khowala "reaffirmed the 2016 PSA" when he extended his service contract with Vivint in 2021. Def. Mem. at 2. The Court finds that the undisputed facts in the record show that Khowala signed the 2016 PSA, and therefore does not address Vivint's arguments concerning whether Khowala "reaffirmed" the PSA.

Vivint's argument that Khowala executed the 2016 PSA largely rests on four additional documents produced during discovery, along with information contained in the Brothers declaration concerning Vivint's business practices when onboarding a new customer. *See* Def. Mem. at 14–16; Brothers Decl. ¶¶ 3–5, 7 (explaining that Brothers was Director of Account Creation in 2016). Taken together, this evidence tells a simple story. The declaration states that, at the time of the installation

of Khowala's security system, Vivint's "business practice was for the Vivint technician at the customer's home to initiate the survey by calling another Vivint employee offsite," then "hand his or her phone to the customer so the customer could speak with the Vivint employee." Brothers Decl. ¶ 10. The declaration adds that Brothers is "very familiar with the processes" that the offsite Vivint employee would use on the call, and that the employee would begin the Post-Install Survey with questions "about the customer's personal passcode – information that only the customer would know," and later confirm that the customer either had signed or was about to sign the PSA before marking the survey as "pass[ed]." *Id.* Vivint's undisputed records show that Khowala's survey was marked "pass[ed]" at 2:50 p.m., and that the PSA was recorded as signed at 2:52 p.m. ECF Nos. 30-3, 30-5.

Khowala does not dispute the authenticity of Vivint's Salesforce records, nor the accuracy or reliability of the Brothers declaration, *see* Pl. Mem. at 12–4 (discussing the Post-Install Survey). Nor does Khowala dispute Vivint's assertion that Vivint would not have started service had its Post-Install Survey not been recorded as "pass[ed]" in its systems. Pl. Mem. at 6; Brothers Decl. at 2. Instead, Khowala argues that certain documents, combined with his deposition testimony, show that a Vivint technician forged his signature on the 2016 PSA. Pl. Mem. at 6–8 ("Danny Urena—and not Plaintiff Pratik Khowala—signed the 2016 PSA.").[2] In support of this, Khowala points to the "Work Orders" produced at his deposition, noting that he recognized his wife's signature and his own signature on certain orders, Khowala Dep. at 72:6–11, 73:13–15, 99:3–6; Work Orders, ECF No. 32-2 at 9–10, 12–14, but that he does not recognize the signatures provided on three Work Orders related to maintenance performed by a Vivint technician named Danny Urena. *See* Khowala Dep. at 71:14–74:6, 98:7–102:11; Work Orders at 2, 4, 8. Khowala appears to acknowledge, however, that his

---

[2] Khowala also insinuates that Vivint maintained a practice of allowing its technicians to forge signatures. *See* Pl. Mem. at 8.

claim that Urena "himself signed the 2016 PSA with his finger on his iPad" ultimately rests on conjecture, not direct evidence. *See* Pl. Mem. at 9.

Yet Khowala fails to rebut any of the evidence concerning Vivint's Post-Install Survey, and does not show how a jury could make a "reasonable inference" that the Post-Install Survey was marked "pass[ed]" due to fraud on the part of multiple Vivint employees. *See generally* Pl. Mem. Nothing in Khowala's submissions or deposition testimony raises a question concerning the credibility, or reliability, of Vivint's documentary records and context provided by Brothers's testimony. *See generally id*. As a result, according Khowala the benefit of every reasonable inference, the evidence is insufficient to create a genuine issue of fact.

Indeed, courts in this Circuit have held that a party does not automatically create a triable issue of fact by merely stating that he "does not remember whether he signed the document" – and Khowala only testified in his deposition that, although he remembers an installation visit, he did not recall signing any agreement. *See* Khowala Dep. at 42:24–44:25 (concerning the visit), 61:8–12 ("To the best of my recollection, I did not sign."); *see Vardanyan v. Close-Up Intern., Inc.*, 315 F. App'x 315, 318 (2d Cir. 2009), *aff'g* No. 06 Civ. 2243, 2007 WL 4276670 (E.D.N.Y. Nov. 30, 2007). Although a categorical *denial* may suffice to create such an issue, a statement that a party "cannot *recall* signing an agreement (as opposed to *denying* [they] ha[ve] done so)" is insufficient standing alone. *See Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 51 (2d Cir. 2022). And, where "evidence demonstrates that [a party] could not have proceeded to use" another party's services "unless they accepted" an alleged agreement, that evidence "renders . . . failing memories irrelevant." *Kutluca v. PQ N.Y. Inc.*, 266 F. Supp. 3d 691, 702 (S.D.N.Y. 2017).

Likewise, "a party normally does not show the existence of a genuine issue of fact . . . merely by making assertions that are based on speculation or are conclusory." *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2011) (per curiam) (citation omitted). Khowala has no response to

6

Vivint's argument that the Post-Install Survey shows that he signed the agreement, except to make vague and conclusory allegations of fraud and assert that Vivint's evidence is "implausible on its face." *See* Pl. Mem. at 12–13.  But in so doing, Khowala fails to point to anything in the record even remotely like the "categorical[] and specific[]" denial that the Second Circuit found sufficient to create a triable issue in *Barrows*.  36 F.4th at 47.[3]

As a result, the Court finds that "undisputed facts in the record require the matter of arbitrability to be decided against" Khowala.  *Meyer*, 868 F.3d at 74.

## CONCLUSION

For the reasons stated above, Vivint's motion to compel arbitration is GRANTED, and the action is STAYED pending arbitration proceedings in accordance with the 2016 PSA.  The Clerk of Court is respectfully directed to terminate the motion at ECF No. 29.

SO ORDERED.

Dated: September 29, 2025
       New York, New York

_____
ANALISA TORRES
United States District Judge

---

[3] Khowala's denials that he signed the 2016 PSA are different in kind than the statements made by the plaintiff in *Barrows*.  There, the defendant argued that an electronic signature provided from a computer maintained at a plaintiff's place of employment showed that the plaintiff had e-signed an arbitration agreement; the plaintiff "adamantly, and categorically, denied having electronically signed any arbitration agreement," stated that she had instead completed all onboarding paperwork by hand, denied that she had ever used any computer on the defendant's premises for any purpose, and denied any knowledge of defendant's virtual employee onboarding system.  36 F.4th at 47–49.  Here, Khowala only states that he "did not sign" the 2016 PSA on the basis that he cannot recall having signed it.  *See* Khowala Dep. at 61:8–9, 89:11–14; Khowala Decl., ECF No. 18-1 ¶ 5 (submitted in opposition to Vivint's first motion to compel).